Case number 22-3086, United States of America v. Stephen K. Bannon, appellant. Mr. Schoen for the appellant, Ms. Dinello for the appellee. Morning, Mr. Schoen. Morning, Elinor. You can adjust the podium to suit your comfort level. Up or down? Proceed when you're ready. Thank you, Elinor. In his commentaries written between 1765 and 1769, William Blackstone wrote, to constitute a crime against human laws, there must be first a will, a vicious will, and secondly, an unlawful act consequent upon such a vicious will. Moving forward about 300 years, our own Supreme Court in a flurry of cases in the past seven years or so, seven, eight years, focused on the fundamental nature of mens rea under our criminal justice system. And they decided the cases cited in Mr. Bannon's brief, recent cases, it's 2015, with principles that are remarkably similar to Mr. Blackstone's understanding that were abandoned in the instant case. Just last year in Ruan v. United States, court wrote, consciousness of wrongdoing is a principle as universal and persistent in mature systems of criminal law as belief in freedom of the human will and a consequent ability of the normal individual to choose between good and evil, quoting from the Morrissette case. It's a fundamental principle in our system. I refer to the Alonis decision also in the brief. And now for this circuit. Judge Pillard, I don't think I have to tell your honor what the court said in, I wrote in United States v. Burden, but I think it's important. I don't think I have to tell any of the judges, Judge Pillard, judge in that case. This court, the case appears to set the threshold for what willfully means. It juxtaposes it to knowingly, just as Justice Alito did in his dissenting opinion in Alonis. And it said, first of all, of course, that it's a word of many meanings. And the defendant in that case, like many other defendants, claimed that they should have to be required to be aware of the specific law they violated. This court rejected that. And they said, though, they set a baseline for what mens rea means in relationship to the charged actus rea. The court found that a requirement the defendants have the proscribed conduct, know the proscribed conduct was unlawful. That's the baseline. And the court gave examples of how it's applied in other cases, the more complicated cases like Cheek with a more stringent standard, but at a bare minimum, that it's required that the defendant know or understand that his or her conduct was unlawful or wrong. In this case, of course, the undisputed record, Mr. Bannon's perspective, based on the Bannon-Proffer and the Costello Declaration, is that Mr. Bannon acted in the only way he believed and understood from his lawyer that the law permitted him to believe, to behave in response to the subpoena. So counsel, I appreciate those arguments, but I just, could you focus on our 1961 decision, Licovoli? Yes, counsel. And what your best argument is that that case simply doesn't tie our hands. And just to set the stage, as you know, that decision addressed this statute and squarely held in an advice of counsel. Defense is not relevant. All that you need is a deliberate and intentional failure to respond to a subpoena. And the cases that you've relied on discuss the meaning of the term willfully generally, but they're not about this statute. So I think the key question is, what is your best authority that we as a panel can depart from that 1961 decision? Yes, your honor. I think there are a number of reasons why that decision is not binding on this court in this case. And I'd like to go through them quickly, but first of all, what I'd like to say is, in Licovoli and in Sinclair, there's not a very rich analysis of why the advice of counsel wouldn't apply. In contrast, this court's decision in Townsend versus United States, 1938 decision, the court comes to a very different conclusion. So when we're applying the panel rule, I think one fairly has to ask, why isn't the panel rule applied to the Townsend decision in the Licovoli case? Let me give an example. This is an appeal from a conviction under this statute to USC 192, well after Sinclair, and the panel cites Sinclair in its decision. They noted Sinclair's holding, and then the court wrote, this court wrote, however, the Supreme Court has also held perhaps on the theory that willfulness is a type of specific intent that where the crime involves willful intent, an accused may show justification by proving that he honestly and in good faith seeks the advice of counsel as to what he may lawfully do, and fully and honestly lays out all of the facts before his counsel, and in good faith and honestly follows such advice, relying on and believing it to be correct, and only intends that his acts should be lawful. Even if such advice by the lawyer was an inaccurate construction of the law. Court then went on to find that in that case, they wouldn't apply it because there was nothing in the record to show that the defendant had sought the advice of counsel, or of course, had then followed it. But Townsend offers a much richer and more comprehensive analysis of the idea than either Sinclair or Licovoli, and it's certainly a decision from a panel of this court that if we apply the panel rule, ought to have been binding authority on the Licovoli pool. Let me go through it. Let me just ask you, Mr. Bannon has relied on executive privilege in this case, both here and in the district court, only to argue that he did not act willfully under section 192. There's not any issue before us here as to whether there is in fact a valid assertion of executive privilege that would be a defense, that would itself be a defense against the contempt charge. It's through the 192 willfulness. I think that's right, Your Honor, with two caveats. Number one, one is not a caveat. One, I would go even further and say, it doesn't matter to this defense whether executive privilege was properly invoked, what the parameters were of it, or otherwise for the willfully part of it. The only caveat I had to Your Honor's question is it also applies, the invocation of executive privilege and his understanding of the consequences of that also applies to the due process defense of entrapment by estoppel. That's what triggers it, because that's what the Office of Legal Counsel opinions, which again, I know at least two members of the panel are very familiar with that process. That's what those go to. And so, I can get into that, happy to get into that if you like, but right now I'm gonna focus on the Likavoli question of why this case is different from what I mean. I take your attention to the subpoenas that were quashed by the district court. You know what I'm talking about? Yes, sir. Okay. Take the document that you requested, that is most relevant to the case. Well, more exactly- What's that? Yeah, I list out a number of examples in the record and in the appendix and the brief, and I also made a very detailed proffer to the district court. But if I were to have to pick one at this point, I would say there's a chairman Thompson's testimony, frankly, chairman Thompson's testimony on issues that became issues in this case. The court in this case barred all defenses. What's the question that you wanted to ask chairman Thompson? Chairman Thompson continued writing letters after the date of the subpoena that urged Mr. Bannon to continue to comply with the subpoena. Those were his words. That would indicate that the subpoena was still alive. Judge Nichols said the only defense that the defendant could pursue in this case was whether the defendant had reason to believe that the dates were malleable or were fixed dates in time. Ms. Amerling wasn't qualified to know what, to testify as to what chairman Thompson meant when he said, I urge you to continue to comply. Even after former president Trump wrote the letter saying, confirming that he had invoked privilege and withdrawing privilege now so that Bannon could testify, July 14th, 2022, chairman Thompson wrote another letter saying, I urge you to comply with the subpoena. So that's one thing. Other would be the authority of the, the authority of the committee issued the subpoena. Remember these committees are, as you well know. But that's the topic. What's the document or what's the question that you wanted to ask chairman Thompson? Question I would, there are many of them. That would have been relevant. One question that would have been relevant would have been on the sole defense that the court allowed, whether the subpoena was still open and why, if these dates that were in the indictment were fixed dates, why did it continue on? I'm not sure I follow that because, you know, there's a lot of activities in life where someone might have a deadline and they might be punished for missing it, but then they might still have an obligation. I mean, tax returns, you know, there's all kinds of things where there are consequences for missing a deadline, but the duty to comply and the utility in this case, the utility to the committee of having the testimony persists, even though there may have been a default. So I'm not sure that I follow that, first of all, it's in the record that Thompson continued to want the testimony. So I'm not sure why you would need any further, everybody's really denying that, but it's more, you're raising an inference or you're drawing an inference from that, that I'm not sure it supports. Your honor, a related question would be why the committee refused to accommodate. There's a constitutional mandate under US versus AT&T to try to reach an accommodation. In this case, what Bannon said through Costello to the committee was, Costello said, Bannon's hands are tied, privilege has been invoked, he cannot comply. However, if you resolve privilege with Trump or get a court to order Bannon to comply, he will comply in full. Secondly. Does it matter under that theory, whether the former president or the incumbent president had communicated any assertion of privilege to the committee? No, your honor, does not. It doesn't matter. So any lawyer can say, I'm speaking for the president here, I don't have anything to show you, but talked on the phone to someone and they're asserting privilege. I mean, when you look at the past cases, like take the Myers case where there's a detailed district court opinion by Judge Bates, there typically is a formal assertion. Typically, your honor, yes. But in this case, we also have, by the way, the ratification, let's say, the confirmation by President Trump in a letter later, confirming- It's not available. When you're talking about the sort of ex-ante obligation to accommodate, and I'm thinking about, you know, whose burden is it to make the next foray into a process of accommodation? And the committee has served a subpoena, and typically I think the deponent would then turn around and proffer some kind of, well, I'll answer all these other questions, but can we reserve questions about my communication with the former president or something? But I don't see in the record that there was any response other than no. Two answers, your honor. I think there was more than no, frankly. He said, if a court orders me to comply, I will. He explained what he was relying on. But a more broad answer, I suppose, is, this is all Costello. There's no contact between Bannon and the committee at any point in time. And that was at the committee's behest. The committee asked Costello to accept the subpoena, and he did. But Mr. Bannon only knows what Costello tells him. This part of the defense is relying on advice of counsel. And by the way, the lack of communication or accommodation didn't turn on whether Justin Clark had the authority of the president. It's whether an executive privilege could apply because he's a former president and because he's a former advisor. All of those issues, which Costello assured Bannon, were not real issues. But at the end of the day, when after the deadline had passed, President Biden had a representative come in, Jonathan Suh, and wrote a letter saying, I've reviewed this, and I don't think that President Trump was right and that privilege really applied. And therefore, Bannon, you're free to testify. That's on the 18th of October. Costello writes to the committee and says, I understand there's this case, Trump versus Thompson out there, that's dealing with the issue of whether, in part, whether an incumbent president overrides the invocation of privilege from the previous president. I'd like to be able to study that. Also, President Biden has just said that he could go forward with the testimony. Chairman, he asked for a one-week extension. Chairman Thompson said, no, the committee's going forward tomorrow with a vote, and they did. That's part of what I call the accommodation process being violated. I just have to return, just quickly, I know I'm up with my rebuttal time already, but I was asked the question earlier about reasons to distinguish this case. You can proceed. Our practice is that as long as we're asking questions, you get extra time. Thank you. There are many answers, but one, Brewster from this court talks about applying the panel rule, and it's clear that it's only applied firmly in cases that are not, that are factually indistinguishable. This case, for a major reason, is factually distinguishable, and that is the invocation of executive privilege. That changes everything, the entire dynamic in the case, and as I say in the brief, if this court were to treat a person who gets a subpoena and believes executive privilege has been invoked and his or her hands are tied and cannot comply, first of all, when the privilege is invoked, it's presumptively valid. Secondly, it's the president's prerogative or a former president's prerogative entirely as to the parameters of that privilege, subject to what a court says the parameters were. Counsel, can I just ask one question about this, the narrative there? So what Mr. Bannon claimed, and at least what he did on October 18th, was essentially to claim a complete immunity from responding to the subpoena, and I believe that was October 18th, and I just want to read to you from the October 16th letter from Justin Clark to Mr. Costello, and what that says is, just to reiterate, our letter referenced below didn't indicate that we believe there is immunity from testimony for your client. As I indicated to you the other day, we don't believe there is. So how do you reconcile that communication with your argument today? A couple of ways. Number one, use of the term immunity is just wrong there. Justin Clark couldn't confer immunity, nor President Trump couldn't confer immunity on anyone. We know that from the McGahn case and otherwise. Secondly, anecdotally, Costello has said Justin Clark was telling him a completely different story. Justin Clark was making clear to him, in his declaration, was making clear to him that Bannon could not comply with a subpoena because this was a protective assertion of the privilege. Bannon wasn't in a position to know what documents or testimony would be covered by it and what wouldn't be covered by it. So at no point did he claim immunity, except to refer to the way that term is used in the 1984 OLC opinion, for example, but the idea is Congress can't decide whether the privilege was properly invoked or not. When the privilege is invoked, it's up to a court as the only arbiter, not Congress. And quite frankly, the government told the jury a different thing. The government likened Congress, in this case, to the referee in a soccer game, and Mr. Bannon's failure to comply with telling that referee in a kid's soccer game not obeying that referee. Never in our system is Congress the arbiter of a subpoena. That's McGahn unbunked. Well, but why isn't the retort that, in your view, the former president, or even more removed, someone that talked to a representative of the former president and advises his client is the arbiter of the privilege? In other words, you're basically, if we were to accept your position in this case, why wouldn't we be basically saying Mr. Costello's representation overrides the ability of the Congressional Committee to investigate? Two reasons, John. I don't think it overrides that, but two reasons. One, he is his lawyer. Advice of counsel is the defense. And secondly, the privilege is presumptively valid. And so when Clark writes in his letter a vigorous assertion of the privilege to cover deliberative processes and communications- But it's just, that's so broad to say it's presumptively valid, even at its broadest, where OLC has written, for example, that a former senior official can assert absolute testimonial immunity, it only covers communications within the scope of that former senior official's service in the White House. And none of the conducted issue here was during Mr. Bannon's service in the White House, was it? None of it. Right, Judge. It was during the presidency.  But not during Mr. Bannon's service. Correct, Your Honor. And do you have any authority that suggests, any authority at all, that suggests that some kind of executive privilege or immunity would apply to conduct that postdates the person's service? First of all, Your Honor, the OLC opinion that I've cited in the brief on the determination about choosing U.S. attorneys doesn't require- The Myers. Yes, doesn't it require to be an employee of the executive branch at all? And that makes sense, former or otherwise. And if the president wants to consult, let's say the president determines, doesn't think he or she, doesn't think the economy is doing so well. And so the president calls in the head of Texaco, who's never worked in the government, and wants to have private confidential communications and be able to assure the head of Texaco that those conversations will remain confidential, the president has that prerogative, solely his prerogative. What about the 15 different numbered topics out of the 18, or I might have the numbers wrong, you know, 14 out of 17, there's a whole list of topics on the subpoena. And I think only three of them even mention communications with the former president. So number of answers to that. This starts with, Bannon is subject to what Costello has told, he did what a lay person should do, he hired a lawyer, period. But Costello's theory on that issue, that he as the lawyer told to Bannon is, this subpoena under the OLC opinion, it says, if the committee refuses to allow the privileged holder's representative to be present during a deposition, the subpoena is unconstitutional and invalid. This was one subpoena, it required testimony and documents. Therefore, Costello, the lawyer told Bannon, the lay person, this subpoena is absolutely unconstitutional and invalid. Not only can't you comply with it, you have no obligation to comply with it, for that reason, in addition to the others. He made it very clear in his declaration. And again, I asked the court to consider in the broader picture, how should a lay person respond when a lay person gets a subpoena from a committee, all of communication is through the lawyer, and the lawyer tells him or her in definitive terms, they may not comply, their hands are tied. At least let a jury decide whether that was reasonable or appropriate advice, whether the lawyer had all of the facts, but let a jury decide. We don't treat a person who believes he or she is acting in full compliance with the law, and in the only way the law applies, only complies with the law, we don't treat that person the same as a wrongdoer, as a lick of bully, a mobster who just didn't show up. I wanna return with maybe just one question to the subpoenas that were quashed on speech and debate grounds. You submitted a 28-J letter about a recent opinion from this court in a resealed case, and in that case, there's some suggestion that the district court needed to kind of go document by document in a way that it hadn't. I think that that case did not purport to be breaking new ground or establishing a new rule. And so my question to you is, to the extent that we think something like that should have happened here, but didn't, not saying we do, it seems like you have not made that argument, or you did not make that argument in your briefing. And so isn't it forfeited? I don't think so. In the briefing, I discussed the very specific proffer that I made to the court about each reason for each subpoena that I believe were narrowly tailored to each of those defendants. But I really filed the 28-J letter because it specifically speaks about things that aren't covered. The court in this case, Mr. Letter's position in this case was you should have a blanket speech and debate clause. This court made clear in the in-resealed case that that's not the way to approach it. We don't have a blanket thing. And my objection was that the court treated it in blanket fashion, but also it specifically spoke about press releases. And that's something I emphasized in my papers is that these members of the committee evidenced, in my view, at least, in their press releases and press statements, a decision to get Bannon rather than accommodate, and to pursue that course to get Bannon. And so I thought that this case made clear in there when they say things like statements to the press and so on may not have broken new ground, but it's a recent decision since the briefing that I thought made that point. Do you see any need? The government has asked for a remand to correct the judgment. There's some, they see some $50 discrepancy. That's something that I think requires a remand. I don't think so, but I don't think, my position won't turn on that. All right, thank you. Thank you, Your Honor. You have sought to reserve time for rebuttal. We've used your time, but we'll give you a couple minutes. Thank you. Good afternoon. May it please the court, Elizabeth Spinella for the United States. Stephen Bannon deliberately chose not to comply in any way with a lawful congressional subpoena, not to provide a single document, not even to show up for his deposition.  And I think that's a very important point that we need to make. And he was properly convicted. Before getting into the mens rea issue, I'd like to address a theme that Judge Pillard, you touched on that runs through some of Bannon's arguments. And that's the notion that President Trump asserted executive privilege. In fact, there was no assertion of executive privilege over the contents of the subpoena, much less one that would justify Bannon's complete default. My understanding is that matters neither to your position nor to Mr. Bannon's position. Is that right? He has suggested it is relevant to his due process claim. I don't think so. I think he suggested that Mr. Bannon's, the advice of counsel referencing executive privilege is all that matters. Certainly on the mens rea issue, I understand his assertion with respect to executive privilege to be relevant to his claim of entrapment by unstoppable public authority. But let me put that aside for the moment and talk about mens rea. Because the district court did not err in barring Bannon from putting on evidence or argument relating to his claim that he acted in good faith on advice of counsel, based on the alleged assertion of executive privilege. The Supreme Court and this court have held that the mens rea element for contempt of Congress requires only that the defendant acted deliberately and intentionally. Good faith, including advice of counsel is not a defense. Cases interpreting other statutes do not change the established mens rea for contempt of Congress. Now we recognize that for many cases, the government has to prove that the defendant did act with a wrongful intent. But for section 192, the Supreme Court has held that no moral turpitude is required. Intentional violation is sufficient to constitute guilt. That was a holding in Sinclair where the defendant had claimed that the judge erred and he was entitled to a new trial because he was precluded from putting on evidence that he acted in good faith on advice of counsel. So what about Mr. Schon's position that you have a client who's not a lawyer, his lawyer tells him full absolute testimonial privilege here and in any event, it's flexible, there's an accommodation process, and in fact, this lay person has testified before Congress in the past and maybe that adds credibility to the notion that there's gonna be some kind of accommodation process. So the only recourse for this defendant is malpractice claim against a former lawyer? The Supreme Court said in Watkins that a defendant who acts on a good faith but mistaken view of the law acts at his peril. That's page 208 of that opinion. And Bannon here certainly had reason to be questioning his lawyer's advice given that not only did Chairman Thompson make clear that his executive privilege excuse wasn't going to apply and that he would be held in contempt of Congress if he continued to fail to comply, but also where the president's own lawyer admonishes Costello and Costello admits that he shares his correspondence with Bannon and Clark says, as you've pointed out, Judge, excuse me, Judge Garcia pointed out that the defendant in this case, Bannon, was not immune from testifying. I don't understand the distinction that counsel has made here. Clearly the point that Clark was making was that Bannon was required to show up and that's consistent with both the procedures that the committee outlined for raising objections. And Judge Pillar, as you've pointed out, the number is 14 out of 17. The vast majority of topics covered by the subpoena could not conceivably have implicated executive privilege as Chairman Thompson explained in plain English in the correspondence with Costello, which we know got forwarded to Bannon. So in terms of fairness, the Supreme Court has said, this is what the law is. And even apart from this court's binding decisions in cases like Fields and Dennis and Licavoli, there is controlling Supreme Court authority that required the district court to exclude Bannon's good faith defense. Your opposing counsel mentioned a United States v. Townsend case and I think maybe it wasn't mentioned in his briefing in terms of his brief when I replied to that. Townsend did not hold or even suggest that if the defendant had been able to show good faith, that would have been a defense. And it certainly isn't inconsistent with the later rulings of this court in Dennis and Fields and Licavoli. Also Townsend at page 359, cites with approval the page of Sinclair where the Supreme Court said that intentional violation is sufficient to constitute guilt. So Townsend cannot be read as somehow being in conflict with this court's later ruling. Do you think it was appropriate for the prosecutor in the case, a closing argument to tell the jury that Bannon had quote, no justification for doing what he did? Given that there was no actual assertion of executive privilege, given that the subpoena on its face included a number of topics that could not possibly have included executive privilege, given that the committee laid out the procedures and repeatedly told Bannon he need to follow them for risk contempt, and given the case law that does not recognize good faith as a defense, then yes, that was a correct statement. He did have no justification for acting as he did. Bannon- It seems a little weird. I'm not saying it's just positive in this case by any means, but it seems like if you're right, and I think you probably are, the district court properly kept out any of Bannon's defenses about his kind of subjective state of mind or the reasons why Bannon did what he did. If the district court tells Bannon you're not allowed to tell the jury your reasons, it's a little odd for the government to be able to tell the jury he had no reasons. Again, given the state of the case law, that was a legally correct argument. He did not have a legal justification for acting as he did. Bannon had a choice. When the committee overrides his executive privilege excuse, he could either at that point comply or not comply and risk contempt. He was aware of that risk. He took it and he was properly prosecuted. I think when you first started addressing the court and you said that there was no executive privilege assertion in this case, and I interrupted you and said, that's not something that we need to reach. Do you think it would be appropriate for us to reach it? Do you think we should reach that question or not? To the extent the court considers the argument that he was somehow entrapped into committing this offense based on the opinions of the office of legal counsel, the fact that we do not actually have an assertion of executive privilege is an additional basis to distinguish those opinions. I say additional because there are other facts that- Could you tell us what you think the best reason is to distinguish the OLC opinions for his entrapment defense? I think probably the easiest one, Judge Garcia, would be that he is a private citizen who has been subpoenaed to provide information about his activities as a private citizen, that none of the OLC opinions address that. There's also the fact that the OLC does not provide guidance to private individuals. It makes that clear on the website. It provides guides to the Department of Justice and to the executive agencies. So is there a next reason? Because the 2007 OLC opinion has at least some general language about the need to contact private citizens in the context of U.S. attorneys. So I'm curious what the next reason would be. Well, a couple responses with that. One, the 2007 opinion is not talking about prosecution. It's just talking generally about executive privilege. So it doesn't suggest that necessarily a private citizen who engages in a conversation with a president could then assume that he wouldn't be prosecuted. But also, that decision was in the context of a president's official decision-making. It doesn't address the issue, which is an open issue. We're not taking a position on it, whether communications regarding a political campaign and its aftermath would also be within the scope of executive privilege. Why does your answer involve all these open questions? I would have thought the answer to Judge Garcia's question is that the OLC opinions are about the assertion by the president, former president even, of executive privilege. And here, President Trump didn't assert executive privilege. Well, this goes back to Judge Pillard's question and perhaps Judge Garcia's too, as to which is our best argument. There are several ways home. And one of the reasons I led off with the lack of an assertion of executive privilege here is that is also a strong reason why any reliance on the OLC opinions just didn't make sense in this case. I'll just one question. I think it's clear based on the arguments today, this is very much a hypothetical question, but I do want to understand the government's position on how, if there is an invocation of executive privilege and the defendant, for whatever reason, is still prosecuted in a case like this, how should the executive privilege claim be raised and litigated in the criminal case?  as an affirmative defense rather than through the lens of mens rea? Let me just back up and also clarify, if I may, your hypothetical. To clarify, let's assume that your assertion of executive privilege is respect to a private citizen rather than an executive branch employee, because it's the executive branch employee and we actually have an assertion of executive privilege, that case wouldn't get prosecuted. But let's assume that that doesn't matter and that we have someone who is prosecuted. Again, I wanted to back up. If there is an assertion of executive privilege, there are procedures for asserting that before the committee to identify which documents are privileged and at the deposition, assert any privilege on a question-by-question basis. Again, that's not this case. I understand you're talking more generally. If the committee overrules the executive privilege claim, at that point, the president or former presidents, just again, assuming that that doesn't matter, can assert that claim himself by filing suit against the witness, which is similar to what happened in the Mazar's case where President Trump sued a third party to enjoin that third party from complying with a congressional subpoena. Didn't that happen also in the Harriet Meyer's case where it was a declaratory judgment suit before Judge Bates seeking to determine the privilege issue? Right. There could be speech or debate clause issues if a suit was filed against the committee. The more likely scenario would be if the president chose to vindicate his interest in executive privilege,  Now, in this case, of course, the president chose not to intervene. Despite Stello's entreaties, Clark did not identify what was privilege. He did not reach out to the committee, nor did he step in once the committee overruled the executive privilege justification. I have a related question. Mr. Shulman was saying that your position is that Mr. Bannon was required to show up and assert any privileges on a question-by-question basis, but he points out that Costello, at least, was of the impression that there was no counsel for the former president who would be allowed to be in the deposition. And so what's the response on that? First, Your Honor, just as a factual matter, I just wanna correct a representation in the reply brief at page two, note one, where Bannon says it is undisputed that the committee advised Costello that the privilege-holder counsel could not attend. The Bannon's attorney, either Bannon or his attorney, actually asked any member of the committee. Costello raised this issue with committee staffer, Sean Tenali, on October 13th, after Costello had already made clear that Bannon was not gonna testify. This is at pages 429 and 439 of the appendix. And Costello says he only is asking us for future reference, doesn't need an immediate answer, and Tenali demurs, does not give an answer. So the committee never rejected that specific request, but even if it had, the only basis for, that Bannon has cited for suggesting that the subpoena was invalid, was this OLC opinion on exclusion of agency counsel, which makes clear that that applies when a witness is called to testify about the witness's official duties within the executive branch. And again, there was an assertion of executive privilege, a direct assertion. And in any event, exclusion of agency counsel issue would not have affected Bannon's obligation to provide documents. Judge Walker, I just wanna return to your questions about the subpoenas. And counsel for Bannon has suggested that it was necessary to call Chairman Thompson to ask about the later request that Bannon still comply with the subpoena. Bannon had already defaulted at that point. He had already committed the offense. And the fact that the committee still was continuing its investigation and still wanted Bannon's information, doesn't in any way change Bannon's default. Also, as the district court found, the Congress's specific motivations, internal deliberations would be protected by the speech debate clause because they were in the legislative sphere. And in any event, none of the matters... Go ahead. I guess I asked about relevancy because I wonder if any of the subpoenaed documents or the questions that he was hoping to ask the subpoenaed witnesses were relevant. And if they were all irrelevant, we wouldn't even have to reach the speech and debate clause issue. Do you agree with that? That's absolutely right. And that's really the shortcut answer to your question about In re Sealed case. And just to direct the court, the district court made specific findings that went through the various categories of information sought in denying the motion for a new trial. That's at pages 4683 to 86 of the appendix. Say that again. I think it's 4683 to 4686 of the appendix. So yes, you can sidestep the... So the answer was none of them are relevant. None of that was relevant. None of it was material. Even the documents that the district court said are protected by speech and debate, even those were not relevant. Correct. And you'll see looking at the judge has several pages in the ruling that addresses the various topics. On the judgment and commitment order question that I believe you had asked, I realized when going back and reading the JNC that that was my mistake. In fact, the 6550 figure is correct because it includes the combined special assessment. So that was my mistake. I apologize. Just ignore footnote one in our brief. That was my understanding. Great. That's helpful. Thank you. And unless the court has any further questions, we'd ask you to affirm the judgment of the district court. Thank you. Thank you. If I might just briefly respond to a couple of things. First of all, Mr. Bannon, neither Mr. Bannon nor Mr. Costello suggested that they were the ultimate arbiter. They asked quite clearly in their letter to have a court decide this. That doesn't mean that they had to bring the action. They suggested to the committee that Bannon would comply fully if the committee got a court to order it. And that's part of the accommodation process. That's what the cases have said in U.S. versus House of Representatives. That's what the cases say in McGann and so on. That's part of the process. And it's appropriate. Congress can't decide. Congress can't be the arbiter of its subpoena or of the validity of executive privilege. That's what McGann on Bonk says. I don't really understand the point Mr. Dinello said about Townsend. I read from Townsend and Townsend unequivocally says, Mr. Dinello said, Townsend didn't hold or suggest that if a defendant acted in good faith, that would be a defense. The court could not have been clearer in Townsend in saying expressly that the reliance on advice of counsel is a justification defense when willfully, willful intent is what's required in the statute. This same statute, that's on pages 358 to 359. There's not a question about what that case says. It's true, Likovoli is later, but that court was aware of Sinclair. They cite Sinclair repeatedly. There's no question about it. Do you think the committee would have asked Bannon anything that was unprotected by executive privilege? I don't know what the committee would have asked. I think the committee had an agenda, was a political agenda. I don't know what the committee would have asked. I know that the reasons that Bannon- I guess if you don't know what they were gonna ask, how can you be so sure that everything would have been protected by executive privilege? I can't be that sure of it. The advice might not have been correct that Bannon got. I can't be so sure that everything was protected, but that's the advice that Bannon got from his lawyer and that the subpoena was invalid. And again, it was one subpoena. That's why their theory is that, and this is what Costello told Bannon, that it applied because it asked for the documents and the testimony in one subpoena. Therefore, that subpoena was invalid. I said that the evidence was uncontroverted about Costello getting that information from the committee that they wouldn't permit privilege holder to be present because there is no competent evidence controverting it. I refer the court to A364. The only evidence on the thing that's competent evidence that was submitted to this court is Costello's declaration under penalty of perjury on it, in which he says the committee told him in no uncertain terms that their rules would not permit the privilege holder to be present. Your Honor asked earlier, was it appropriate for the court to say there was no justification, for the government to say there was no justification for Bannon? The government went much further than that. They went much further in arguing. First, they argued that there is, I'm sorry, Judge. I just realized we're well over time. So just wrap up. I reserved two minutes for the button. I thought your Honor said I'm gonna give you a couple of minutes. Yeah, no, you've had your three plus. Go ahead, finish your point. Government went much further than that. After arguing at length that there was no, no defense is relevant, there is no justification for it. Bannon is not permitted to put on any reason. The government argued to the jury that there was no justification. They argued that Bannon didn't comply with the subpoena because he thinks he's above the law. You can't have it both ways. And when they did this in the opening, I suggested to the judge that this clearly requires us to call Thompson because they argued he ignored the subpoena. He didn't ignore the subpoena. Did you object? Yes. In the opening, as soon as they said above the law, we had a bench conference and so on. I would point out to the court that the government clearly understood it had made a mistake shortly before the trial. They showed buyer's remorse. I cite this in page three of the- We read that, we read that. All right. Thank you. Thank you very much. The case is submitted.
judges: Pillard, Walker, Garcia